```
                IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF TEXAS
                          HOUSTON DIVISION

CARTER DIBRELL,                   §
                                  §
       Plaintiff,                 §
                                  §
v.                                §    CIVIL ACTION NO. H-04-4854
                                  §
ERNEST HUBER and DELPHIA          §
MILTON-TURNER,                    §
                                  §
       Defendants.                §
```

MEMORANDUM AND ORDER

Pending is Defendants Ernest Huber's and Delphia Milton-Turner's Motion for Summary Judgment (Document No. 15). After having carefully reviewed the motion, response, and the applicable law, the Court concludes that the motion should be granted.

I. Background

Plaintiff Carter Dibrell ("Plaintiff") brings this 42 U.S.C. § 1983 action against Dickinson Independent School District ("DISD") employees Ernest Huber ("Huber"), principal of McAdams Middle School ("McAdams"), and Delphia Milton-Turner ("Turner"), a teacher at McAdams, (collectively, "Defendants"). Plaintiff, a former McAdams history teacher, alleges that Defendants violated his rights by causing him to be constructively discharged, intentionally inflicting emotional distress upon him, interfering with his business relationships, and conspiring maliciously to institute a criminal prosecution against him. See Document No. 1.

On April 3, 2003, Plaintiff was involved in a physical altercation with a McAdams student.  According to Plaintiff, when a fight broke out among male students, he intervened to assist a female teacher in disengaging the fighting boys.  Plaintiff separated the boys, but one of them--a student with a history of misbehavior--slugged Plaintiff and cursed at him.  Plaintiff then escorted the student to the administrative office, where the student alleged that he had been assaulted by Plaintiff.  The student's family reported his allegations to the Dickinson Police Department, and criminal assault charges were filed against Plaintiff.  In addition, DISD instituted its own independent, in-house investigation of the incident.  After conducting a hearing, DISD determined not to reinstate Plaintiff's employment, and Plaintiff filed an appeal.  Before the appeal was heard, however, Plaintiff elected to execute a Full and Complete Release and Indemnity Agreement (the "Release"), pursuant to which Plaintiff voluntarily resigned his teaching position and received $35,000 in exchange for releasing DISD and its employees in their official capacities

> from all claims, demands and causes of action of whatsoever nature, whether in contract or in tort, under Federal, State or Administrative law for personal injuries, economic loss, employment benefits, or any other tangible or intangible elements of damage, past, present or future, which accrued on or before the date this release is executed [November 21, 2003], and which relate to the recommendation for and/or suspension/ 'administrative leave' and proposed termination of

2

> [Plaintiff's] employment, pursuant to the authority of
> the Texas Education Code and policies of [DISD], for
> certain events alleged to have occurred on or about
> April 3, 2003 at [McAdams].

Document No. 15 ex. A.  The City of Dickinson dismissed the criminal charges against Plaintiff in late 2004.

In his Complaint, Plaintiff alleges that Defendants "conspired together to make the working conditions so intolerable by accusing him falsely of assaulting a student that Plaintiff felt compelled to execute a resignation from his protected position of employment."  Document No. 1 ¶ 34.  Plaintiff also alleges that Defendants "intentionally or recklessly accused [Plaintiff] of having assaulted a student when they knew to the contrary and that the [campus security] film evidence failed to establish their accusations, and then caused evidence to disappear," thereby causing Plaintiff severe emotional distress.  Id. ¶ 35.  Plaintiff further claims that Defendants, "though both state actors, yet neither being [Plaintiff]'s employer, with full knowledge that even a groundless accusation against [Plaintiff] of having assaulted a child would result in an adverse employment action against him, intentionally or recklessly accused [Plaintiff] of having assaulted a student, proximately causing [Plaintiff]'s separation from his contracted employment and commitment to future employment with [DISD]."  Id. ¶ 36.  Finally, Plaintiff asserts that Defendants "civilly conspired to initiate, importune or procure a criminal

prosecution against Plaintiff in order to retaliate against [him] for having exercised and to prevent him from exercising free speech"; "conspired to initiate, importune or procure a criminal prosecution against Plaintiff in order to effect his separation form [sic] employment and make a [history] position for Turner at McAdams"; and "acted to deprive Plaintiff of protected interests without due process of law, procedural and substantive" by acting "with malice and without probable cause in initiating the prosecution." Id. ¶¶ 37-39. Defendants move for summary judgment on the grounds that (1) section 101.106 of the Texas Tort Claims Act bars Plaintiff's suit, and (2) Defendants are entitled to qualified immunity because Plaintiff has failed to allege that Defendants violated a clearly established federal right.

## II.   Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 106 S. Ct. 2548, 2553 (1986). Once the movant carries this burden, the burden shifts to the nonmovant to

4

show that summary judgment should not be granted.  *See* id. at 2553-54.  A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  *See* Morris v. Covan Worldwide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998) (citing Anderson v. Liberty Lobby, Inc., 106 S. Ct. 2505, 2514-15 (1986)).  "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  Id.

In considering a motion for summary judgment, the district court must view the evidence through the prism of the substantive evidentiary burden.  *See* Anderson, 106 S. Ct. at 2513-14.  All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party.  *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  Id. (citing Anderson, 106 S. Ct. at 2511).  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for

summary judgment if it believes that "the better course would be to proceed to a full trial." Anderson, 106 S. Ct. at 2513.

### III.  Discussion

A.  Immunity Under the Texas Tort Claims Act

Defendants first argue that § 101.106 of the Texas Tort Claims Act bars Plaintiff from bringing this suit against them.  Section 101.106 provides in pertinent part:

> The settlement of a claim arising under this chapter shall immediately and forever bar the claimant from any suit against or recovery from any employee of the same governmental unit regarding the same subject matter.

TEX. CIV. PRAC. & REM. CODE § 101.106(c).  According to Defendants, because the allegations against Defendants in Plaintiff's Complaint arose from the April 3, 2003 incident and are the exact allegations that led to Plaintiff's execution of the Release Agreement, Plaintiff's present suit against Defendants involves "the same subject matter" as the Release Agreement and is therefore barred. *See* Document No. 15 at 2-3.

In response, Plaintiff asserts that he is suing Defendants under § 1983, and therefore the immunity provisions in the Texas Tort Claims Act do not apply to this suit.  Plaintiff concedes that if he "was bringing state tort claims against Defendants, then the dismissal of those state claims would be proper under the Texas

6

Tort Claims Act immunity provisions."  Document No. 19 ¶ 24. Plaintiff argues, however, that "Defendants' immunity from state tort claims does not effect [sic] Plaintiff's right to bring a claim based on the United States Constitution."  Id. ¶ 25 (citing Hernandez v. Duncanville Sch. Dist., No. Civ. A. 3:04-CV-2028-BH, 2005 WL 723458, at *6 (N.D. Tex. Mar. 29, 2005) ("Immunity from liability for state law tort claims is a separate issue from liability for claims based on the United States Constitution.  The Court's determination that [defendants] are immune from liability under the Texas Tort Claims Act for state law tort claims does not affect [plaintiff]'s right to bring claims against them based on the United States Constitution.")).

Because Plaintiff represents that he is not asserting state law tort claims against Defendants in this action, but rather brings only § 1983 claims against Defendants in their individual capacities, Plaintiff is correct that § 101.106 of the Texas Tort Claims Act does not provide Defendants with immunity from this suit.  Accordingly, Defendants are not entitled to summary judgment on this ground.

B.  Qualified Immunity

Defendants also contend, however, that they are entitled to qualified immunity on Plaintiff's § 1983 claims because Plaintiff has failed to allege that he suffered a deprivation of a federal

7

right.  Qualified immunity protects government officials acting within their discretionary authority from suit unless their conduct violates a clearly established constitutional right.  Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003).  In determining whether an official is entitled to qualified immunity, a court must first "consider whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right."  Haggerty v. Tex. S. Univ., 391 F.3d 653, 655 (5th Cir. 2004) (quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)).  If there is no constitutional violation, the inquiry ends, and the official is entitled to qualified immunity.  Mace, 333 F.3d at 623.  If, however, the allegations could make out a constitutional violation, the court must then "ask whether the right was clearly established--that is whether 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"  Haggerty at 655 (quoting Price, 256 F.3d at 369).  Even if the official's conduct violates a clearly established federal right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable.  Hernandez ex. rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs., 380 F.3d 872, 879 (5th Cir. 2004).

"Although qualified immunity is a two-step analysis, the threshold issue presented by any case arising under Section 1983 is

whether a plaintiff has sufficiently alleged a deprivation of a right secured by the Constitution." Id. "It is well-established that Section 1983 does not create substantive rights; rather, it merely provides civil remedies for deprivations of rights established under the Constitution or federal laws." Id. (citing Felton v. Polles, 315 F.3d 470, 479 (5th Cir. 2002) ("[Section 1983] is not itself a source of substantive rights; instead, it provides a method for vindicating federal rights elsewhere conferred.")). "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." Harrington v. Harris, 118 F.3d 359, 365 (5th Cir. 1997).

In this case, Plaintiff seeks to base his § 1983 claims on Defendants' alleged violations of state tort law. Specifically, Plaintiff alleges that Defendants violated § 1983 by committing the state law torts of intentional infliction of emotional distress, interference with business relationships, malicious prosecution, and/or civil conspiracy.[1] However, "[i]t is fundamental to our

---

[1] Plaintiff also asserts that Defendants violated § 1983 by causing him to be constructively discharged, *see* Document No. 1 ¶ 34, "but this allegation cannot constitute a due process violation," Rutland v. Pepper, 404 F.3d 921, 923 (5th Cir. 2005). The Fifth Circuit has held that "[c]onstructive discharge in a procedural due process case constitutes a § 1983 claim only if it amounts to forced discharge to avoid affording pretermination hearing procedures." Id. (quoting Fowler v. Carrollton Pub. Library, 799 F.2d 976, 981 (5th Cir. 1986)). The uncontroverted summary judgment evidence is that Plaintiff was afforded a pretermination hearing and the opportunity to appeal DISD's decision and, thus, Plaintiff cannot assert that he was constructively discharged in violation of his procedural due

9

federal jurisprudence that state tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a *federal* right." Nesmith v. Taylor, 715 F.2d 194, 195 (5th Cir. 1983) (emphasis added).

Here, the state law torts that Plaintiff asserts as bases for his § 1983 claims are not actionable under § 1983. First, "although emotional damages are available under § 1983, a claim of intentional infliction of emotional distress . . . cannot form the basis of a § 1983 action because there is no constitutionally protected interest at stake." Carter v. Jess, 179 F. Supp. 2d 534, 540 (D. Md. 2001); *accord* Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669, 678 (6th Cir. 2005) ("[I]ntentional infliction of emotional distress, by itself, cannot amount to a constitutional violation. . . . We have not . . . ever held that intentional infliction of emotional distress, by itself, amounts to a cognizable constitutional claim remediable pursuant to 42 U.S.C. § 1983, and Plaintiff has not cited to any authority that would support such a claim.").

Likewise, Plaintiff cannot sue under § 1983 for tortious interference with a business relationship because it is a state law tort, and Plaintiff has failed to show how the tort implicates a right established under the Constitution or federal laws. *See* Khan

---

process rights. Moreover, Plaintiff has neither alleged nor presented any evidence that he was constructively discharged in violation of his substantive due process rights.

v. Gallitano, 180 F.3d 829, 834-36 (7th Cir. 1999) (holding that plaintiff failed to show how "the right to be free from state officials tortiously interfering with one's existing contractual relationships" deserved constitutional protection, such that right was not actionable under § 1983); see also BPNC, Inc. v. Taft, 147 Fed. Appx. 525, 530 (6th Cir. Aug. 16, 2005) (unpublished) ("[Plaintiff] cannot sue under § 1983 for tortious interference with contract because it is not a right that arises under federal law."); Nahas v. City of Mountain View, No. C:03-05057, 2005 WL 2739303, at *7-8 (N.D. Cal. Oct. 24, 2005) ("Plaintiffs argue that 42 U.S.C. § 1983 provide [sic] a basis for their interference with business relations . . . claims.  The Court rejects Plaintiffs' argument.").[2]

With respect to the malicious prosecution claim, the Fifth Circuit recently clarified that "'malicious prosecution' standing alone is no violation of the United States Constitution, and that

---

[2] To the extent Plaintiff may have intended his interference with business relations claim to allege a violation of his Fourteenth Amendment due process rights, the summary judgment record contains no evidence that Plaintiff suffered a deprivation of due process. Cf. BPNC, Inc. v. Estep, 2004 WL 1304938 (N.D. Ohio May 10, 2004) ("[B]ecause plaintiffs may pursue their interference with contractual arrangements claim as a State law claim for tortious interference with contract, they may not pursue it under § 1983 as a Fourteenth Amendment due process claim.").  To the contrary, the summary judgment evidence is that a hearing was held regarding Plaintiff's employment, and Plaintiff was afforded the opportunity to appeal DISD's decision, which he did. Plaintiff neither alleges nor presents evidence that this process was deficient in any way.

to proceed under 42 U.S.C. § 1983 such a claim must rest upon a denial of rights secured under federal and not state law." Castellano v. Fragozo, 352 F.3d 939, 942 (5th Cir. 2003) (en banc); *see also* Izen v. Catalina, 398 F.3d 363, 366-67 (5th Cir. 2005) ("In this circuit, plaintiffs no longer allege a constitutional violation by satisfying the state law elements of malicious prosecution alone."). In other words, there is no "freestanding constitutional right to be free from malicious prosecution." Castellano, 352 F.3d at 945. Because Plaintiff does not clearly identify a specific constitutional violation underlying his "malicious prosecution" claim, it is not actionable under § 1983. *See* Izen, 398 F.3d at 367; Castellano, 352 F.3d at 960.[3]

Finally, § 1983 "does not provide a cause of action per se for conspiracy to deprive one of a constitutional right." Barkauskie v. Indian River Sch. Dist., 951 F. Supp. 519, 539 (D. Del. 1996) (citation omitted). "A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on

---

[3] Plaintiff suggests in his Complaint that Defendants conspired to initiate a malicious prosecution against him in retaliation for having exercised his First Amendment free speech rights, but Plaintiff neither addresses nor presents any evidence in support of such a claim in response to the motion for summary judgment. *See* Document No. 20. Although causing Plaintiff to be subjected to criminal prosecution with the substantial motivation of retaliating against him for, or dissuading him from, exercising his free speech rights could violate the First Amendment, Plaintiff has failed to raise so much as a fact issue on the elements required to establish a First Amendment retaliation claim in the prosecution context. *See* Izen, 398 F.3d at 367-68. Accordingly, Defendants would be entitled to qualified immunity on such a claim.

all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.'" Hale v. Townley, 45 F.3d 914, 920 (5th Cir. 1995). Because Plaintiff has failed to raise so much as a fact issue that Defendants violated any of his constitutional rights, Plaintiff's conspiracy claim fails as a matter of law.

In response to Defendants' motion for summary judgment, Plaintiff states only that he "is alleging that Defendants conspired and made misrepresentations in an attempt to have Plaintiff criminally charged on false accusations, for the purpose of forcing him out of the school." Document No. 19 ¶ 34. Plaintiff provides no explanation as to how this conduct constitutes a violation of any right secured to him by the Constitution or federal law. Because Plaintiff has failed to show that Defendants violated any of his clearly established federal rights, Defendants are entitled to qualified immunity on Plaintiff's § 1983 claims.

## IV.  Order

Accordingly, it is

ORDERED that Defendants Ernest Huber's and Delphia Milton-Turner's Motion for Summary Judgment (Document No. 15) is GRANTED, and Plaintiff Carter Dibrell's case is DISMISSED.

The Clerk shall notify all parties and provide them with a signed copy of this Order.

SIGNED at Houston, Texas, on this 3rd day of January, 2006.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE